Walter PARKER et al., Appellants,

v.

Elizabeth LEACH et al., Appellees.

No. 5008.

Court of Civil Appeals of Texas.
Beaumont.
Jan. 13, 1955.

Motions for Rehearing Overruled
Feb. 2, 1955.

Charles S. Pipkin, Beaumont, for appellants, Walter Parker and others.

King, Sharfstein & Reinstra, Beaumont, for appellant John H. Richardson.

Baker & Vaughan, Port Arthur, Stanley Baron, New Orleans, La., Strong, Moore, Pipkin, Strong & Nelson, Orgain, Bell & Tucker, Beaumont, for appellees

R. L. MURRAY, Chief Justice.

This is an appeal by John H. Richardson on the one hand and Walter Parker and Jessie Thomas on the other from judgments against them in favor of Elizabeth Leach, et al., and from judgment of contribution in favor of appellants against the other appellants, in the district court of Jefferson County.

This was a common law damage suit brought by Elizabeth Leach, individually, as the surviving wife and Administratrix of the Estate of Rodney B. Leach, deceased, and also by Christine Leach, a minor, suing by her next friend, the said Elizabeth Leach, against Walter Parker, doing business as Parker Wrecker Service, and his employee, Jessie Thomas, appellants here; and also against John H. Richardson, also appellant here, doing business as Richardson Motor Company, and against Neves Frank Terrebonne, for damages because of the death of Rodney B. Leach, deceased, the husband and father, respectively, of the said Elizabeth Leach and said minor, Christine Leach, and also for damages for the death of Kathleen Leach, a minor, the daughter of plaintiff, Elizabeth Leach and the said Rodney B. Leach, and sister of Christine Leach, a minor.

The accident made the basis of this suit was a collision occurring on a public highway in which an automobile owned and driven by Rodney B. Leach, and occupied by him and his wife and two children, Christine Leach and Kathleen Leach (the latter of which died as a result of the accident), was in collision with a pick-up truck owned and operated by Terrebonne, who was accompanied by his wife, who was also injured.

Neves Frank Terrebonne, who was the owner and driver of the pick-up truck involved in the accident, and a defendant under the Leach claim, filed a cross-action against the plaintiff, Elizabeth Leach, as Administratrix of the Estate of Rodney B. Leach, deceased, and against all the other defendants above-named, and in addition, against Pearl Beer Distributing Company, for damages to himself and his wife, growing out of said accident.

The defendants and cross-plaintiffs below, and appellants here, Walter Parker, doing business as Parker's Garage (Parker Wrecker Service), and his employee, Jessie Thomas, each filed a cross-action against co-defendant, John H. Richardson, doing business as Richardson Motor Company, and against Neves Frank Terrebonne, and against the plaintiff, Elizabeth Leach, as Administratrix of the Estate of Rodney B. Leach, deceased, alleging that they each breached a duty they owed to cross-plaintiffs, Parker and Thomas, and that they were each guilty of active negligence, and prayed for judgment for full indemnity over and against Richardson, and against Terrebonne, for the amount of any judgment which might be recovered against them for the death of Rodney B. Leach, deceased, as well as judgment over and against John H. Richardson and Elizabeth Leach, as Administratrix of the Estate of Rodney B. Leach, deceased, for full indemnity for the amount of any judgment which might be recovered against them for the claimed injuries to Terrebonne and his wife; and Parker and Thomas also prayed, in the alternative, for judgment for contribution, in each instance.

The original defendants, John H. Richardson and Neves Frank Terrebonne, each brought a cross-action against Walter Parker, doing business as Parker Wrecker Service, Jessie Thomas, and Elizabeth Leach, as Administratrix of the Estate of Rodney B. Leach, deceased, seeking full indemnity, and in the alternative, contribution, as to Parker and Thomas.

At the close of all the testimony, the defendant John H. Richardson filed motion for instructed verdict which was overruled.

The case was tried to a jury, which returned a verdict finding negligent acts and omissions against Parker, Thomas and Richardson, which were found to be proximate causes of the damages, in favor of Mrs. Elizabeth Leach, for herself individually, in the amount of $26,486.36, and in favor of the minor, Christine Leach, in the

amount of $8,750; and also finding damages for Neves Frank Terrebonne and his wife, in the sum of $12,581.66.

The defendant, Pearl Beer Distributing Company, went out of the case on its motion for instructed verdict, which was not contested in the trial court, and which is not contested on appeal.

The defendants and cross-plaintiffs, Walter Parker and Jessie Thomas, and each of them, filed motions for judgment on the verdict of the jury that they be awarded judgment over and against Richardson for indemnity for the full amount of any judgment awarded the said Elizabeth Leach and Christine Leach against Parker and Thomas, and to cross-plaintiff, Terrebonne, against Parker and Thomas. The defendant and cross-plaintiff, John H. Richardson, filed motion for judgment in his favor against the appellees on the verdict, and also filed motion for judgment on the verdict for full indemnity against Parker and Thomas, and in the alternative for contribution for any judgment which might be rendered against him. Richardson's motion for judgment on the verdict as to appellees was overruled.

The motions filed by the respective parties were denied as to indemnity but were granted by the court as to contribution between the co-defendants. The court rendered and entered judgment against Walter Parker, Jessie Thomas, and John H. Richardson, jointly and severally, for damages to plaintiff, Elizabeth Leach, individually, in the sum of $26,486.36, and in favor of the minor, Christine Leach, in the sum of $8,750, and in favor of the cross-plaintiff, Neves Frank Terrebonne, in the sum of $12,581.66, for damages to himself, his wife, and for property damage to his truck.

The judgment decreed that said amounts should bear 6% interest and that Elizabeth Leach recover nothing as Administratrix, and no other person recovered any money in the suit; the court fixed the attorney's fees of the attorneys for the plaintiff, to be paid out of the amounts awarded to the said Elizabeth Leach and Christine Leach, and further awarded contribution in the amount of one-half of said amounts to be paid by the defendants, Parker and Thomas on the one hand, and Richardson on the other— each to the other.

The appellants, Walter Parker and Jessie Thomas, filed original motion for new trial which was amended under leave of the court. This amended motion was overruled by the court, and due notice of appeal was given.

The appeal by appellants, Parker and Thomas, presents only the complaint that the judgment should have awarded them full indemnity against the appellant Richardson, instead of contribution. No complaint is made by appellants, Parker and Thomas, of the judgment rendered against them in favor of appellees, Elizabeth Leach and Christine Leach and Terrebonne and they do not in their appeal ask this court to disturb that portion of the judgment. They pray only that judgment as to contribution be modified or reformed and do not ask that any portion of the judgment be remanded for a new trial.

The appeal by the appellant Richardson complains of the judgment against him in favor of all the appellees, and also complains of that portion of the judgment awarding contribution by him to appellants, Parker and Thomas, and denying him full indemnity against the said Parker and Thomas. Richardson prays that the judgments against him in favor of Leach and Terrebonne be reversed and rendered in his favor; and in the alternative that the judgment awarding him contribution only against Parker and Thomas and awarding contribution against Richardson be reversed and rendered, that Richardson recover full indemnity from Parker and Thomas; further in the alternative he prays that the judgment be reversed and remanded for a new trial only as to the issues of indemnity and contribution between Richardson on the one hand and Parker and Thomas on the other.

The appellant Richardson, on and prior to November 29, 1952, operated a repair shop for motor vehicles in Beaumont,

Texas, and prior to that date, one of the defendants in this case, Pearl Beer Distributing Company (which later went out of the case on an instructed verdict) brought to the shop of Richardson, a large truck tractor for the purpose of having the motor overhauled. The work to be done on the truck, which included a road test after the repairs were made on the motor, was done by Taylor, an employee of Richardson; and to test out the repairs which he had made, Taylor drove the truck out on U.S. Highway 90 to the vicinity of Liberty, Texas, a distance of 40 miles, and just at the edge of the City of Liberty, after starting his return trip, he began having some trouble with the left front wheel of the truck. It was pulling or dragging heavily, and he thereupon drove the truck off the paved portion of the highway, and stopped the truck some distance from the edge of the pavement, at the outskirts of the town of Liberty.

Suspecting trouble in the bearings of one of the front wheels of the truck, and not having any extra wheel bearings with him, Taylor went to a nearby telephone and called in to Richardson Motor Company at Beaumont, requesting that bearings be sent or brought out to him, with which to repair the defect.

Richardson located another one of his employees, Shumaker, who looked after the automobile parts, and arranged with him to bring the bearings and things called for by Taylor to the location of the truck near Liberty, and Shumaker proceeded by automobile to the location of the truck.

In the meantime, after having placed the telephone call, and before the arrival of Shumaker with the extra parts, Taylor returned to the truck after he had placed the telephone call, and having a jack in the truck, placed it under the front axle close to the center, and without raising the tire of the front wheel off the ground, as he testified, as a precaution against the wheel falling off on him, in case it might fall. He removed the hubcap from the outside of the left front wheel which seemed to be giving the trouble, and when he had taken the hubcap off the wheel, a part of the spindle comprising several inches of the outer end thereof, and the outside wheel bearing came off the wheel, and Taylor discovered then and there that the spindle had broken, and that the outside wheel bearing which rides the spindle had become welded or frozen to the piece of the spindle which had broken off, it being explained in evidence that the spindle is the axle or hub on which the wheel rests, and which supports the front wheels.

Taylor, upon discovering that the spindle was broken, and that the bearing was crushed, replaced the hubcap, which he had removed from the wheel, on the other part of the wheel, and placed the piece of broken spindle and remains of the attached bearing in his pocket. He did not remove the jack from under the wheel, according to his testimony.

He then awaited the arrival of Shumaker. When Shumaker arrived he discovered that the spindle was broken. Taylor showed him the piece of spindle which he had taken off the front wheel of the truck; and then, according to their testimony, Taylor and Shumaker proceeded to the Ford Agency in Liberty for the purpose of obtaining a wrecker, but were unable to find one to handle the job. According to Shumaker, he then placed a call to Parker Wrecker Service in Beaumont and requested a wrecker to tow the disabled truck in to Richardson's shop.

In making this call, he talked to one Beatrice Armistead, an employee of Parker, who stated that all that Shumaker told her about the trouble with the front wheel was that "all he knew he had front wheel trouble, and he wanted it brought into the shop." She was told that he thought he had bearing trouble, and she asked him if the wheel was off, and he told her no, that he couldn't get it off. He further stated that they needed a winch truck to bring the disabled truck in. Mrs. Armistead testified that she was not told and did not know that the spindle was broken on the truck, and that she did not inform the defendant, Jessie Thomas, the driver who was sent out

with the wrecker to tow in the disabled truck, that the spindle was broken.

Mrs. Armistead states that she dispatched Jessie Thomas with the wrecker, to tow the truck in to Richardson's shop. Jessie Thomas proceeded with the wrecker truck of Walter Parker to the location of the disabled truck. When he arrived, both Taylor and Shumaker had left the scene, Taylor still having the broken part of the spindle in his pocket. He stated that he observed the jack about center-ways of the truck, a little more to the left than it was to the right, but it was not holding anything up.

He hoisted the front end of the diesel truck by means of the power drive winch and cables with which his wrecker was equipped. He testified that his information was that the diesel truck had some front wheel trouble, and upon hoisting the front end of the diesel truck he endeavored to shake and turn both of the front wheels by means of which he discovered that the trouble was in the left front wheel. Although he had much previous experience in removing wheels from this type of truck and although his wrecker was equipped with winch lines, cables, wrenches, a wrecking bar, chains boomer and boomer chains, he made no effort to tie or secure the wheel to the truck and made no effort to remove the wheel from the truck other than by shaking the same. He had available all necessary tools to remove the hubplate, which would have revealed the broken spindle, and although he denied that he knew the spindle was broken, he stated: "I didn't exactly diagnose the spindle. I knew there was some kind of spindle trouble."

He likewise knew that if the spindle was broken it would have been dangerous to tow the truck on the highway without taking the wheel off.

He testified as follows:

"Q. Did you know when you were out there that the spindle was broken? A. No, sir.

"Q. Did you know that the end of that spindle was broken off? A. No, sir.

"Q. Did Mrs. Armistead tell you before you left the shop that that spindle was broken off? A. No, sir."

He further testified:

"Q. Now if you had known that that spindle was broken off, what would you have done? A. I would have either got the wheel off or left the truck right there, but if you will allow me to say this, if they had told me the spindle was broken on that truck when I got there I would have been looking to see the wheel and the truck down on the ground.

"Q. Didn't you know something was wrong when the spindle after you got out there? A. Several things can cause the spindle trouble, sir, your brake can freeze or your brake come unscrewed and release, and the wheel won't come off, either, either way, whether it's pulled or spinning.

"Q. Jessie, why were you trying to get that left tire off if you didn't know that that spindle was broken? A. I didn't know the spindle was broken, sir, but I knew it was front wheel trouble.

"Q. You knew it was front wheel trouble? A. Yes, sir, and I was just cautious to check the wheel to make sure it was all right."

Jessie Thomas backed the rear of his wrecker truck up to the front end of the disabled truck and hooked onto the truck, and then before lifting the front end, made an examination of the front wheel, which was sitting, according to his testimony, in a normal position. He then tied a line onto each side of the truck, and then tightened up on his lifting cables, and shook both wheels and could find no loose motion in the wheels. He then continued hoisting the front end of the truck up from the ground and suspended it in the air. He checked the truck over, both sides, front and back. He found that he could not move the left front wheel, although he tried to pull it off, after testing it for movement. The wheel would not move either way. He stated the bolts

holding on the hubplate did not seem to have been touched; that he did not see the marks of any wrench having been on the bolts. He did not find out what the trouble with the wheel was while he was out there; that the right front wheel would turn but the left front wheel would not.

He then finished raising the front wheels of the disabled truck to about 18 inches off the ground, and began his tow to the Richardson shop in Beaumont.

He pulled in on the side of a filling station at Raywood, after traveling about 10 miles, and checked the left front wheel again and found everything in order, riding all right.

He then drove on to Nome, along Highway 90, where, with the use of a flashlight, he again inspected the truck and found the left front wheel in the same condition, and the tow riding in order. This was about 20 miles west of Beaumont.

He testified that after leaving Nome, he came on to Beaumont, towing the truck with the front wheels suspended about 18 inches from the ground; he was driving about 25 or 30 miles an hour, on a straight road from Nome to Richardson's garage, except for a small curve at China, and then, that the road was straight after that; he did not stop the tow between Nome and Richardson Motor Company, and he struck no obstructions on the way, and made no sudden stops, and nothing out of the ordinary occurred on the way in, and he did not know when the wheel came off, that during that time he was meeting traffic on the highway, but that traffic was worse between Beaumont and Nome than it was between Liberty and Nome. He states that he never heard any scraping or dragging noise upon the pavement behind him, and that after he left Nome, he was checking in the glass back of him from time to time to see how his truck was trailing back there.

Taylor, the Richardson employee, from the undisputed evidence in this case opened up the wheel and took out the broken portion of the spindle, put it in his pocket, and replaced the hubcap. With reference to his knowledge of what would happen if the truck was towed on the highway in the condition in which he left it, with the portion of the spindle in his pocket, he testified as follows:

"Q. And you took this little hub plate off here on the bottom with some plates, with a wrench or something? A. Yes, sir.

"Q. You took that out and put it in your pocket, and then put the cap back on? A. Yes, sir, just temporarily put that back on.

"Q. You just temporarily put that back on, but you know it stayed there from then on, didn't you? A. I intended for it to stay on.

"Q. You intended for it to stay on and you put it back so it would stay, and then put that in your pocket, and from that minute forward you knew? A. I knew.

"Q. That that truck, if towed, on the highway, would fall off, didn't you? A. Yes, sir.

"Q. And you knew that you had called, you said you stood at the 'phone and heard Shumaker call for the front end of it to be hoisted up and towed to Beaumont, didn't you? A. Yes, sir.

"Q. And you knew every minute of that time that if it was towed to Beaumont in that condition, it would probably fall off? A. I knew with the spindle broke it would, sure.

"Q. You knew it would, you had the guarantee of it in your pocket, didn't you? A. Yes, sir.

"Q. You sure did, and you knew it would. There wasn't any guess on your part that it might fall off? A. I knew it would fall off.

"Q. You knew it would fall off. You, as a trained mechanic, knew it would fall off. You had the guarantee right in your pocket, and this was not, there was not any question in your mind whether the spindle was broken or not? A. No, there was not."

He further testified as follows:

"Q.. When you saw the truck, you had the truck in charge, you saw the wheel, you knew the wheel was going to fall off if it was hoisted on the highway, you knew the traffic condition, and also knew if the front wheel dropped off on that highway and was allowed to remain there, somebody would get hurt, didn't you? A. Yes, sir."

Jessie Thomas testified that by the time he had reached Nome it was dark, and he then proceeded on in to Beaumont, to Richardson's shop, without again stopping, and when he let the truck down at the Richardson shop he noticed that the left front wheel was missing.

In the meantime, cross-plaintiff, Terrebonne, was proceeding from a point in Louisiana, traveling westward along Highway 90, and at the time he was meeting the automobile driven by deceased Leach, at a point about seven miles from Beaumont, and discovered a large wheel lying flat-wise on his right-hand lane of traffic; that he struck same with the front part of his car, wheel or axle, and there was a collision between his pick-up truck and the car driven by deceased Leach, which was traveling in the opposite direction.

As a result of the collision, the driver of the car, Leach, was killed, and his minor daughter, Kathleen Leach, died soon thereafter, and Mr. and Mrs. Terrebonne received personal injuries.

The jury's verdict consisted of their answers to 47 issues submitted in the court's charge. Some of the findings made by the jury with the number of the special issues answered in each instance were as follows:

"Special Issue No. 11, that Shoemaker failed to inform Armistead that the spindle on the disabled truck was broken; (12) that the failure of Shoemaker to inform Armistead that the spindle on the disabled truck was broken was negligence; (13) that such negligence was a proximate cause of the collision; (17) that Taylor in replacing the hub-cap on the disabled wheel, concealed the broken spindle; (18) that the replacing of the hubcap on the disabled wheel and concealing the broken spindle constituted negligence on the part of Taylor; (19) that such negligence was a proximate cause of the accident; (20) that the employees of Richardson failed to fasten or to see that the left front wheel was fastened to the beer truck while the same was being towed to Beaumont; (21) that such failure was negligence; (22) that such negligence was a proximate cause of the collision; (23) that the act of replacing the hubcap on the disabled wheel would constitute a dangerous hazard while same was being towed unless the wheel was removed; (23–A), that Taylor knew when he replaced the hubcap on the disabled truck wheel that such would constitute a dangerous hazard while same was being towed unless the wheel was removed; (24) that the act of Taylor in replacing the hubplate over the broken spindle was negligence; (25) that such negligence was a proximate cause of the collision; (26) that Taylor failed to inform Parker's employees of the danger in towing the truck without removing the left front wheel; (27) that such failure on Taylor's part was negligence; (28) that such negligence was a proximate cause of the collision; (29) that the failure of Jessie Thomas to remove the wheel from the disabled truck before towing same to Beaumont was negligence; (30) that such negligence on Thomas' part was a proximate cause of the collision; (31) that Thomas' failure to fasten the disabled wheel to the body of the truck before towing the same to Beaumont was negligence; (32) that such negligence on Thomas' part was a proximate cause of the collision; (32–A) that Thomas' failure to fasten the disabled wheel to the body of the truck before towing same to Beaumont was not the sole cause of the collision; (33) that Thomas failed to discover the broken spindle on the left front wheel

of the beer truck before he began said towing to Beaumont; (34) that the failure of Thomas to discover that the spindle on the left front wheel of the beer truck was broken was negligence; (35) that such negligence on Thomas' part was a proximate cause of the collision; (36) that Thomas failed to keep a proper lookout while towing the beer truck to Beaumont to determine whether the left front wheel was remaining in position; (37) that such failure to keep a proper lookout was negligence; and (38) that such negligence on Thomas' part was a proximate cause of the collision."

No complaint is made by any party appellant of any finding by the .jury. We think all findings are amply supported by the evidence.

Appellant Richardson brings his appeal under 13 Points of Error. Under his first four points he contends that the trial court erred in overruling his motion for judgment upon the jury's verdict, for the reasons that (1) under the undisputed evidence and the verdict of the jury the negligence of the employees of Richardson could not as a matter of law be a cause of the collision in question in that there was no danger to any one so long as the disabled truck remained at the place where control of it was surrendered to Parker, and the collision could have occurred only by the negligent acts and omissions committed by appellant Thomas; (2) the verdict shows as a matter of law that the negligence of Richardson, through his employees, could not be a proximate cause of the injuries and damages sustained by the appellees Leach and Terrebonne, in that the employees of Richardson could not reasonably have contemplated the negligent acts and omissions committed by Thomas; (3) the verdict shows as a matter of law that the acts and omissions of Thomas, for whom Richardson was in nowise responsible, constitute a new and independent and intervening cause as to any negligent act or omission by the employees of Richardson; (4) the verdict shows as a matter of law that the accident and collision was solely and alone caused and brought about by the negligent acts and omissions found by the jury to have been committed by Thomas. Appellant Richardson makes the argument under these points that the acts and omissions on the part of Taylor and Shumaker, his employees, in removing the broken parts of the spindle from the left wheel of the disabled truck, replacing the hubplate over the broken spindle and thus concealing it, and failing to see that the wheel was fastened to the truck; failing to inform Parker's employees of the fact that the spindle was broken and failure to inform Parker's employees of the danger of towing the truck without removing the wheel, merely furnished the condition upon which the subsequent negligent acts of Thomas operated, and that the negligent failure of Thomas to remove the wheel from the disabled truck or to fasten the disabled wheel to the body of the truck or to keep a proper lookout while towing the truck, completely broke the causal connection between the negligence of Richardson's employees and the injury, and says that such negligence on the part of Thomas became the proximate cause as found by the jury of the collision. He cites and relies upon the rule announced in Phoenix Refining Co. v. Tipps, 125 Tex. 69, 81 S.W.2d 60; Baughn v. Platt, 123 Tex. 486, 72 S.W.2d 580; Southwestern Bell Telephone Co. v. Hardy, 131 Tex. 573, 117 S.W.2d 418.

We note that the jury found in answer to Special Issue No. 32–A that the failure of Thomas to fasten the disabled wheel to the truck before towing it was not the sole cause of the collision. This was the only issue submitted to the jury inquiring whether any act of the appellants or their employees was the sole proximate cause of the collision.

Appellant Richardson points out in his argument that, as stated in his first point, there was no danger to any one in the concealed broken spindle in the wheel of the truck so long as it remained on the side of the road where his employees left it; that it required the subsequent acts and omissions of Parker's employees in connec-

tion with the towing of the truck to bring the dangerous agency directly into play as the efficient and direct cause of the tragic collision. He contends that his employees could not reasonably have foreseen that Parker's employees would be negligent in preparing to tow and in towing the disabled truck to Beaumont, and therefore the acts of Richardson's employees could not have been the proximate cause of the collision. We do not agree. A prior or remote cause cannot be made the basis of an action for damages if it does nothing more than furnish the condition or give rise to the occasion which makes the injury possible, if such injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition. Phoenix Refining Co. v. Tipps, supra. We do not regard the acts and omissions on the part of Richardson's employees, found to be negligence and proximate causes in the jury's verdict, as a mere prior or remote cause. In the first place, the damaged wheel on the disabled truck was left on the side of the road by Richardson's employees with the purpose in mind of having it towed along the public highway approximately 40 miles to Beaumont. They knew that this dangerous agency, the danger of which was fully appreciated by Taylor, Richardson's employee, was to be towed on the highway. Taylor fully appreciated the danger inherent in the condition of the truck and its wheel, and anticipated that such dangerous condition would probably become operative in the very act of towing. He not only should have foreseen but testified himself that he did foresee that in the towing process the wheel would probably fall off the truck and hurt somebody. The subsequent acts of Parker's employees and the resulting injuries were anticipated. Taylor's negligence were therefore a proximate cause of the injury.

We think the negligent acts and omissions of Richardson's employees must be regarded as negligence which concurred with the negligent acts of Parker's employees, and that the two groups of negligent acts operated together to bring about the collision and injuries. The intervention of the negligent acts of Parker's employee, Thomas, was not sufficient to relieve Richardson from the consequences of the negligence of his employees, since it persisted and continued to operate during the towing operation by Thomas until the collision was caused. When the new cause or agency concurs with the continuing original negligence in bringing about the injuries, the original negligence remains a proximate cause of the injuries. The negligence of Parker and Parker's employees was such that it did not supersede the negligence of Richardson's employees and become in itself the sole proximate cause of the injuries, but as we view it, merely concurred and cooperated with it to bring about the injuries.

Taylor was found negligent not only in failing to notify Thomas that part of the spindle was out, but he was found negligent in replacing the hubcap on the wheel and in thus concealing the broken spindle. This act of concealing the broken part continued in its effectiveness in helping to bring about the collision throughout the towing of the truck. If the truck had been left, in its damaged condition, on the side of the highway, and Taylor had had no purpose of having it towed on the highway, and had not made the arrangements with Parker or any one else to have it towed, and if Parker or his servant had then hitched up the truck and towed it away in a negligent manner, then Richardson's argument would apply to that situation. Taylor in such a case could not have reasonably foreseen that any injury to any one would probably result from his act of covering up the broken spindle. He would not know the truck would be towed on the highway. Such acts of Thomas would be a new and independent cause, superseding the negligence of Richardson's servants and relieving Richardson of liability. A different situation in that respect is present in the instant case. Richardson's employees covered up the dangerous damage in the wheel and then arranged for it to be towed on the public highway.

On the authority of Gulf, C. & S. F. Railway Co. v. Ballew, Tex.Com.App., 66 S.W.2d 659; Robert R. Walker, Inc., v. Burgdorf, 150 Tex. 603, 244 S.W.2d 506 and Atchison v. Texas & P. Railway Co., 143 Tex. 466, 186 S.W.2d 228 we hold that the negligence of Parker's employees and the negligence of Richardson's employees concurred in bringing about the injury according to the verdict of the jury. The trial court did not err in overruling his motion for judgment on the verdict and those four points are overruled.

By his Points Nos. 5, 6, 7, and 8 appellant Richardson complains of the trial court's action in overruling his motion for instructed verdict at the close of all the evidence and says this was error because (1) the evidence failed to raise any issue of negligence on his part; (2) there was no evidence to establish that any negligence on his part was a proximate cause of the accident; (3) by the undisputed evidence Parker was an independent contractor to tow the truck and was a bailee of said truck and assumed full control and custody thereof in towing it to Beaumont, and Richardson was under no legal duty to see that the truck was towed in such a manner as not to injure other parties on the highway; (4) because the undisputed evidence shows that the collision was solely caused by the failure of Thomas to remove the left front wheel from the truck before towing it, or to secure the wheel to the truck before towing it. These points are overruled. From the statement of the evidence given above we believe that fact questions were raised for the jury's determination whether Richardson's employees were guilty of negligence and whether such negligence was a proximate cause of the collision. We also believe that even though Parker was a bailee of the truck and had assumed full control of it in towing it to Beaumont, nevertheless the acts of Richardson's employees as outlined above in our discussion of Points 1 to 4, inclusive, were such as raised the fact question as to whether they were negligence and a proximate cause of the collision. It was the negligence of Richardson's employees, originating before the towing began and continuing on through and during the act of towing, which were negligence and were proximate causes of the collision. Richardson's responsibility for the dangerous condition of the truck did not cease when he delivered it to Parker for towage to Beaumont. It continued so long as the effects of such negligence continued to be in operation until the time when it, concurring with the further negligence of Thomas, operated to bring about the injury. From what has been said in the discussion of the first four points, it is seen that we believe that it is not shown by the undisputed evidence that the negligence of Thomas was the sole proximate cause of the collision.

Richardson next complains in Points 9, 10 and 11 of the trial court's judgment because it did not decree to him full indemnity against Parker and Thomas for the full amount of the judgment rendered against Richardson, and rendered judgment in favor of Parker and Thomas against Richardson for contribution for one-half of the judgment awarded to appellees. Under these points he contends that Parker and Thomas were independent contractors for the towing job for Richardson; that complete control over the towing was surrendered to Parker and Thomas; that Thomas knew there was some kind of spindle trouble on the truck; that he failed to make the necessary inspection which would have revealed the broken spindle; that Richardson's employees by the jury's finding were negligent in replacing the hubcap on the wheel and in concealing the broken spindle; in failing to fasten the front wheel on the truck; in failing to inform Parker's employees of the danger in towing the truck. He says that the negligence found against Thomas, who is Parker's employee, was the failure to remove the wheel from the disabled truck; failure to fasten the wheel to the body of the truck and his failure to discover the broken spindle on the front wheel; his failure to keep a proper lookout while towing the truck and all such acts of negligence were the proximate cause of the collision. He says that under the case of Humble Oil & Refining

Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995, Parker's employee breached the duty he owed to Richardson when he failed to discover the concealed danger in the wheel on the truck and that Richardson breached no duty which he owed Parker, since Taylor, his employee, could not be required to anticipate negligence on the part of Thomas and Parker. The cited case of Humble Oil & Refining Co. v. Martin, supra, does hold that as applied to the instant case if Parker and Thomas breached a duty to Richardson, under the circumstances, and Richardson breached no duty owed to him by Parker and Thomas then Richardson would be entitled to full indemnity from Parker and Thomas. If both parties breached a duty owing to the other, equal contribution should be decreed as was done by the trial court in the judgment.

Richardson contends under these points that the jury necessarily found in its verdict in connection with the negligent acts and omissions of Thomas, that Thomas had a full appreciation and knowledge of the dangers and hazards involved in towing the truck with the wheel in its dangerous condition. He says that otherwise the jury could not have convicted Thomas of the negligent acts and omissions in the findings which it made. We note, however, that in regard to negligence on the part of Parker's employee Thomas, the jury found that the failure of Thomas to remove the wheel from the truck was negligence and that his failure to discover the broken spindle on the wheel of the truck was negligence. Richardson therefore cannot successfully contend that Thomas knew that the spindle was broken and that the wheel was in a dangerous condition because of such break. The jury's finding was that he was negligent in not discovering this condition of the wheel. As we view the situation, neither appellant can be found, on the verdict of the jury, to have been blameless in his conduct toward the other. Taylor's failure to notify Thomas or Parker's office that he had removed the broken spindle from the wheel and concealed it by replacing the hubcap was a breach of duty he owed Parker. When he delivered the truck to Parker's servant to be towed to Beaumont he owed him the duty to inform him of any concealed dangers, dangers not likely to be discovered except by a removal of the hubcap and examination of the spindle. A person delivering an instrument to an independent contractor or bailee for use owes him a duty to reveal any dangerous condition existing therein. 6 Am.Jur. 401. Under the evidence here and under the findings of the jury the trial court did not err in refusing to grant appellant Richardson's motion for judgment for full indemnity against Parker and Thomas and in decreeing contribution against Richardson in favor of Parker and Thomas.

■ In Points 12 and 13 Richardson complains of the trial court's action in refusing to submit his requested Special Issues Nos. R7 and R8, R9 and R10. The first two of said issues sought to inquire of the jury whether Thomas knew before losing the truck wheel that the spindle on the wheel of the truck was broken and whether he should have known that it was broken. The latter two issues sought to inquire whether Shumaker, Richardson's employee, in a conversation with Beatrice Armistead, Parker's employee at his office in Beaumont, informed her that the spindle was broken and whether from the telephone conversation between Armistead and Shumaker Armistead should have known that the spindle was broken. These points present no error and they are overruled. The matters inquired about were not in regard to ultimate issues of fact and were included substantially in other issues submitted in the charge.

Parker and Thomas by their 16 Points of Error complain of the trial court's judgment granting to Richardson contribution against Parker and Thomas and in failing to grant to Parker and Thomas full indemnity against Richardson in the amount of the judgment rendered against them. Under these points they argue that from the facts and the findings of the jury, the injuries which were the basis of the judgment against all three of the appellants, jointly and severally, resulted from a vio-

lation of a duty which Richardson owed to Parker and Thomas and appellant Richardson therefore owes them full indemnity, and in the alternative, contribution, as decreed in the judgment. The cite and rely on Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Wheeler v. Glazer, 137 Tex. 341, 153 S. W.2d 449, 140 A.L.R. 1301, and Humble Oil & Refining Co. v. Martin, supra. Since we have held above in a discussion of appellant Richardson's contentions in regard to indemnity from Parker and Thomas that Richardson was guilty of a breach of his duty to Parker and Thomas, it follows that Parker and Thomas in their contention for full indemnity must prevail unless the negligence of Parker and Thomas be found to constitute a breach on their part of some duty they owed to Richardson, unless the agents of both Richardson and Parker were guilty of wrongful conduct which joined and concurred in bringing about the injury in such a way that indemnity should not be granted to either party. We believe the discussion in Austin Road Co. v. Pope, 147 Tex. 430, 216 S.W.2d 563, is helpful here. In the present case from the findings of the jury above set out and from the facts as outlined in the statement above, it seems clear to us that neither appellant is entitled to full indemnity. There are no facts or findings establishing varying degrees of negligence. The evidence and the jury's finding in the verdict clearly convict both Richardson and Parker, through their servants and agents, of wrongful conduct which joined and concurred in bringing about the injury. Each party did more than merely create a condition under which the other negligently acted. The negligent conduct of each was a proximate cause of the collision and no single act of either was found to be the sole proximate cause. Each owed the other certain duties, which duties were breached. Richardson owed Parker the duty to disclose to him the dangerous nature of the wheel on the truck. Parker owed Richardson the duty to tow the truck in a careful and prudent manner, with due regard to the safety of the truck itself and the safety of other travelers on

the highway. His employee is convicted of active negligence in towing the disabled truck without taking the proper precautions against injury to third parties on the highway. Under all of these circumstances we think the trial court was correct in denying full indemnity to both appellants and in decreeing equal contribution by them to the other.

The more than usually complicated issues were carefully submitted in the court's charge and we think the case was carefully tried and proper judgment rendered. All parties have favored the court with excellent briefs and the discussions and arguments in all of them reflect careful and extensive work in their preparation. We believe the judgment is correct and it is accordingly affirmed.